Good morning, Your Honor. May it please the Court, Tyler Green on behalf of North Dakota Retailers Association and The Corner Post. In a bit of a change of pace from this morning's other arguments, this case is about when APA claims first accrue under Section 2401A. The District Court held that The Corner Post's APA claims first accrued, its claims against the Board's debit card rule, that is, first accrued in 2011, a full seven years before The Corner Post even opened its doors or accepted its first debit card payment. That accrual holding misrepresents the two separate statutory predicates found in 5 U.S.C. Sections 702 and 704 that The Corner Post had to meet before it could state an APA claim. So I want to begin, if I could, with the first of those two requirements. That's Section 702's rule that an agency's action must aggrieve or adversely affect the plaintiff. The District Court agreed this statute out of the United States Code for the reasons well stated by Judge Sutton in the Sixth Circuit's opinion in the Hur case. All we're asking this Court to do in this case, and I think perhaps the easiest way for this Court to resolve this case, is to adopt what Judge Sutton and the Sixth Circuit held in Hur case. And if I could point to the particular language, I think, from that opinion, Your Honor, that is dispositive here. This is the language at 822. It's at 803 F. 3rd, page 822. And this is the quote. When a party first becomes aggrieved by a regulation that exceeds an agency's statutory authority more than six years after the regulation was promulgated, that party may challenge the regulation without waiting for enforcement proceedings. And that's... But, Counsel, that was an enforcement case, though, right? No, Your Honor, it wasn't. That was a declaratory judgment action. There was certainly indication in the opinion. The Forest Service had sent a letter and said to the Hurs, we are going to do something to you. But the Forest Service had not yet done that. And I think that's a... Well, do you think there's a different rule for enforcement actions? Let's approach it that way. I think there could be, Your Honor, certainly. And that's where this notion of sort of an as-applied defense to this type of claim might arise. But it's only after the government has done something to take an affirmative action. And in those circumstances, a plaintiff who has had his statute of limitations already run, it's already been six years since that plaintiff was first aggrieved, can still raise the legality of the regulation as a defense in those enforcement proceedings. But that's not what happened in Hur, and that's certainly not what happened here. This case is one where the corner post did not even exist until the year 2018. And the district court said somehow seven years before it existed... The store existed when you're trying to determine when the statute or when the rule went into effect. What is the connection? That's a critical question, Your Honor. And I think it's related to this notion of how APA claims accrue under the statute. Again, 2401 talks about first accrual. When does the claim first accrue? And that's a claim-specific rule. For APA claims, that's a two-part inquiry. One, when did the rule become final? We have arguments about that, and I want to talk about that. But there is a separate and second statutory requirement that there must be an aggrieved plaintiff. So to your answer, Judge Smith, Chief Judge Smith, as to why it matters, a party could not have... My client's corner post could not have showed up in 2011 or 12 or 13 or any time until 2018 and stated a viable APA claim because there was no agency action that had aggrieved them or adversely affected them. So that's, again, a following... Do you have a case involving a business that came into being this distant from the enactment or put in the promulgation of a rule that has the remedy available to it that you seek? Not a case involving a business, Your Honor. Our best case is the Hur case. It's Judge Sutton's case from the Sixth Circuit. So that's where... I think it's the first time any court of appeals in this country has really addressed this issue with that sort of specificity. So what we're asking and what we think the appropriate course for this Court to do would be to adopt Judge Sutton's rule and say, look, there are two — Congress specified two separate requirements before a plaintiff could bring an APA claim. There's no question... Where in your brief is the Hur cited? All over our brief, Your Honor. It's one of our PASM cases. So... And that's not good for us at oral argument. Page numbers are better at oral argument. Page numbers are better at oral argument. Instead of the word PASM. Especially when it's on two or three pages of the brief. That's why I looked in your list. I know it's in there. Yeah, I know. I did, too. So I think what I would point the Court to is this is our... I was glad that Chief Judge was nice. This is our third argument, Your Honor. I think I would point the Court there first. And so that starts on page — apologies, let me find it here real quick. That is on page — it's the argument section that starts on page 27 and goes to page 30. It's not on every page of the brief. No, no. I may have overstated slightly. But it's certainly on page — No, no. I just meant don't put PASM. Thank you. Thank you. Yeah. We'll remember that for next time, Your Honor. It is in — it's in that argument section, 27 to 34. Thank you. And what it does is, Honor — I've still not found it. Oh, I found it. The third page end, page 29. Twenty-nine. Yes, Your Honor. Yeah. So that's the discussion of where Judge Sutton said, look, Congress has specified two predicates. If a plaintiff tries to show up and bring — I don't find it on other pages either, but I've ridden that horse. That's on 32. Go ahead. Okay. Thank you. Congress said if a plaintiff tries to show up and bring an APA claim without being adversely affected or aggrieved, that plaintiff fails to state an APA claim. There is no claim. The case must be dismissed. And therefore, for a claim to actually accrue, for an APA claim to actually accrue, there must be certainly this final agency action. But that final agency action must also adversely aggrieve or affect the plaintiff. And it's just a logical impossibility, what the Board is arguing here. Well, Counsel, now, you're also representing the North Dakota Retail Association, right? Correct. And Corner Post is a member of that association. That's right. So these associations get ahead of it both ways under your rule. They can claim standing based on, in many cases, they can claim standing based on their members. Well, let's say back when the rule was taken out. And then they can turn around and find a new entity, which there's bound to be in the United States economy. And they get two and maybe thousands of bites at the apple under your rule, right? So this is no, Your Honor. And let me explain two reasons why. Just hundreds of bites. It's North Dakota. Not even that, Your Honor. Not even that. What happens is, as we pled this initially in our original complaint, which has since been amended, so for precisely to avoid this problem, the only basis the associations would have had under our original complaint would have been to sue on behalf of companies that were specifically situated, those just like Corner Post. Which is why we thought, after the board raised the issue and we took advantage of the amendment that the federal rules offer, just to avoid this particular issue, we'll just make the Corner Post itself a second plaintiff. But my second response. Corner Post a what? An individual and separate plaintiff. So instead, before, the Corner Post was the affiant in our original case. As this Court knows, if associations are going to bring suit, there must be an affiant that says, I'm a member of the association, right? I'm the one who's harmed. So the Corner Post is our affiant. It's been part of this case since day one. First, as an affiant. You think that was a change in substance as opposed to a change in form only? No, no. It was to avoid, I think, you know, we looked at the board's arguments in its motion to dismiss and we said, let's make sure we can make this as easy for the Court to handle and just put the Corner Post separately as a plaintiff. But my second response to your argument, Your Honor, is this notion of somehow if this happens, it's going to create numerous bites at the apple. I think two responses to that. First, Judge Sutton's opinion for the Sixth Circuit was decided in 2015. There's been no indication. The board decided none. We certainly haven't seen it in the cases we've looked at, that this has somehow opened the floodgates to these sort of new or belated charges or challenges to agency action in the Sixth Circuit. If that were true, I think we would have seen it. Secondly, this sounds very much like a statute of repose argument rather than a statute of limitations. We, of course, argued the repose argument in our brief. I didn't see any response to it in the board's brief. Perhaps they'll have an answer today. There is a place where Congress can put these sort of agency decisions that's beyond challenge in the kingdom of repose, if you will. But this is squarely in limitations land. This is not that. Congress has, in fact, with other agencies and specific requirements that agencies do rules, has said you must challenge by the date it's published in the Federal Register and put separate timelines. We don't have one of those here. Okay. So if I could, as I mentioned, excuse me, as I mentioned up front, I think that's perhaps the cleanest way to get rid of this case. And the easiest way the Court can say, copy what Judge Sutton in the Sixth Circuit said and say there are two requirements to the accrual of a time. Your time's going fast, so what about the Isaac Walton case? The Isaac Walton case in this continuing violations, I know it's obscured by a formal term, continuing violations. Sure. But if you get down to the substance there of it, I think it's contrary. Man, I have to, I won't say this, well, I'm going to say it. Let's assume it's contrary to the Hur case. Okay. Okay. Of course, you can quarrel with that premise. But why doesn't Isaac Walton hurt you on this point? So I do quarrel with the premise. I don't, so that may not surprise you. Yes. Isaac Walton, as we read, excuse me, as we read Isaac Walton, it's a case about the finality requirement, about final agency action. And, but even to the point of why does it, why does it not hurt us on the, in respect to the Hur case? Well, I would point the Court is to page, in the Isaac Walton case, this is page 761. Where first, this is what the Court says there. Wilderness Watch's claims accrued no later than April 4, 1980, when it published in the Federal Register. That's the one requirement, final agency action. Go to the next paragraph, though. Furthermore, even if the map were unclear, Wilderness Watch has known since the passage of the relevant Wilderness Act in 1978 that the Forest Service was not doing what it wanted, that its interests were being aggrieved, or that its interests were injured. So this is, in fact, the precise distinction I think we're talking about here. What the Court found here, the Isaac Walton case, there was that actual injury and aggrievement even before, the Court said, even before the final Wilderness Plan was published. It went back to the passage of the Act, where these plaintiffs who wanted this land to be dealt with a particular way had a problem because the Forest Service wasn't dealing it with that particular way. So it's this notion, again, of when does my interest as a plaintiff, when is it harmed, when am I aggrieved? This is the separate statutory requirement under Section 702. And Isaac Walton said, you, Isaac Walton plaintiffs, had your interests and injuries aggrieved in 1978. So that's why I think it would be consistent on why this doesn't create a problem for us. I would say just briefly on the final agency action point, Your Honor, there was no basis after the D.C. Circuit issued its opinion in the Max case in 2014, there was no basis for anyone in the regulated community to know what that rule was actually going to be until the Board issued its updated rule in 2015. That's the event that culminated and was the consummation of the Board's decision-making process and also fixed rights and obligations. And that's why I think the D.C. Circuit says the Board's rules rest on reasonable construction of the statute. And so they sound like they're approving it 99 percent. But they also said, Your Honor, those are two different things, of course, right? One of them has to be under Schraban, a reasonable interpretation of the statute. Separately, it has to not be arbitrary and capricious. It has to be adequately and cogently explained. And if you look at a part of the Max opinion we've cited, this is 746F3rd at 492 and 493, the D.C. Circuit said these are the two things I think are critical. We agree with the merchants that the Board has fallen short of cogently explaining why it has exercised its discretion in a particular manner. Not only that, later on in the next paragraph, the Board's own interpretation of the statute thus undermined its justification for concluding that it could include these transaction monitoring costs. So what you had here was not only a failure to explain, but what little explanation did exist was contrary to the Board's other interpretation. So if all the Board had done here in the updated rule in 2015 was double down on its earlier statements, it would have been compounding the problem and gotten further away from something that was rationally explained. So therefore, I think there's the only basis really under Bennett is to find that it was a final agency action is the 2015 updated rule. If there are no further questions, I'll reserve my time. Mr. Chadwick. Good morning, and may it please the Court. Joshua Chadwick for the Federal Reserve Board. This case involves an industry challenge to a 2011 Board rule that cut debit card fees by more than half, from a market rate average of 44 cents to a regulated cap of 21 cents per transaction. Because the rule didn't regulate the fees quite as low as the merchants wanted, retailers brought an immediate and timely, but ultimately unsuccessful challenge in the D.C. circuit. Still unhappy with that result, the merchants here seek a do-over years after the statute of limitations has expired. The merchants make four different arguments in their effort to escape the district court's dismissal. I think my colleague in front of Mr. Green has started with their third argument, so I'll begin with that one. That's the argument that the date of incorporation of one of the trade association plaintiff members, the Corner Post, is the operative date for the running of the statute of limitations. More accurately, their argument is that the date the Corner Post elected to begin accepting debit cards is the actual date. So that would have been 2018 v. 2017. But no court of appeals, and indeed no district court, Mr. Green identified none in response to the question, Your Honor, this morning, has ever held a merchant's favor on this point. And there's an established body of case law to the contrary. Talk about the significance of the H.E.R. case that's been, that's relied on extensively by the appellate. Well, I would start, Your Honor, by saying that H.E.R. is in tension. Of course, it's not binding Sixth Circuit case. It is in tension with the Isaac Walton case, and I'll talk about that in a moment. But it's an as-applied case, Your Honor. The H.E.R.s were property owners. They were receiving letters from the Forest Service threatening them with six months in prison. That's, and Judge Sutton said that they could, didn't have to, quote, bet the farm and face prison versus challenging the rule. But, of course, it's the ordinary case that in an enforcement proceeding, as the APA in 703 provides this as a default standard, that you can challenge in an enforcement proceeding any basis for the rule. So that's a very different case than the facial challenge that's at issue here. The mercenaries are seeking not an injunction against enforcement in their particular case, not avoiding to bet the situation where they have to bet the farm. They are seeking additional regulatory benefit. They are seeking the rule be struck down for every possible plaintiff for, in every possible circumstance.  And this Court's decision in Isaac Walton, I think, really drives that fact home. Now, Isaac Walton states the proposition that has been stated by the majority of the courts of appeals, which is very clear. The time for running on a facial challenge is the date of publication in the Federal Register. Does the term facial challenge appear in Isaac Walton? It does not, but it is, I believe you're correct, it does not. But it does say the challenge to the rule. It was a facial challenge in that case, Your Honor. It was a challenge to the Forest Service publication of a map that delineated where the wilderness boundary was or was not. And by dint of that challenge, it was not an attempt to avoid enforcement or any particular application of the rule. It was a determination that the Forest Service had simply gotten it wrong and that the rule had to be set aside. But more germane to Isaac Walton, and this is something else that the decision doesn't itself say, Your Honor, but I will note that the parties in that case, Mr. Green points to 1978 as the date of accrual, but the record in that case, and it's not mentioned in the decision, makes it clear that those plaintiffs did not even exist at that time. Okay. So that one of the three plaintiffs was a northeastern Minnesotan, Sir Wilderness. The complaint in the case, which is in the record, says it was only formed in 1996, 16 years after the regulation was published. Did you cite the source for that statement in your brief? I did not, Your Honor, but it's the Complaint Document J on that. I will, Your Honor. But what this illustrates, Your Honor, and this is ubiquitous, I think, in these cases, which is that it is very often the case that new parties will come into existence and that would reset the statute of limitations each and every time. In this case, every single time. If Congress intended that, we're going to do it. Okay. Tell me how Congress did not intend that. How Congress did not. Because they could have done a statute of pros. You heard what your opponents said. Right. Well, there are four or five other things they could have done. Let me talk first. There are four or five other. That's okay. It works better that way. There are four or five things your opponent identified they could have done, and they didn't. They took the more open-ended one. So maybe Congress did intend that. Every time a new business comes in, they can sue about this regulation that's costing them money. Well, Your Honor, the merchants try to draw a bright-line distinction between statutes of limitations and statutes of repose. And I will concede that in the most recent case law, post-1970s, circa 1980s, there's been a more defined distinction between what a statute of repose and a statute of limitations is. But up until at least the 1979 dictionary, edition of Black's Law Dictionary, statute of limitations were defined to include statutes of repose. Indeed, there's no question that a statute of limitation, the primary or one of the very primary purposes of statute of limitations is to provide a measure of repose. And so a statute of repose can be written in a way that is absolutely bars all claims. But the word accrual and the way a statute of limitations applies in a given case is a subject of much judicial interpretation, can mean slightly different things depending on the statute. Now, note in this regard that the merchants say that all the other limitations Congress has placed on rule challenges. So under the Hobbs Act or there's a long list of statutes that are cited in the complaints, they call those statutes of repose. Typically provide 60 days would be a common time for a party to bring an action after a final rule is published. And they say, well, those are statutes of repose because they don't use the word accrue. But those statutes have the same aggrieved party language. The idea that somebody would be aggrieved are contained there. And of course, those are not true statutes of repose either because as I think the rules can always be challenged in enforcement actions and through a rulemaking petition under APA section 553E, which would allow any interested party to petition for the rescission, for the amendment, or for the withdrawal of a rule. But of course, that's not an option that the corner posts or that the merchants have availed themselves of here. There are no further questions on the corner posts incorporation date, Your Honors. I'll turn to the other issues that they've raised, and that's, number one, their first argument and their second are related, but the idea that the Board's 2015 clarification of the rule in a very, to use the D.C. Circuit's words, minor respect, I think, Judge Benton, you had it right when you said 99 percent, that issue did not restart the statute of limitations. That was not, as the district court correctly held, final agency action. That was a mere clarification and elaboration on one very small part of the rule. Indeed, the D.C. Circuit found the rule to be entirely enforceable, did not vacate the rule, and again, the trade associations, including the National Retail Federation representing the entire retail industry in that case, chose not to take any further action. The district court held jurisdiction in that case until the clarification was issued, and then the parties to the case consented to entry of judgment after the clarification was complete. That did not alter the rights or the obligations of the plaintiffs, which is what the legal standard is for final agency action under the standard that they've put forward that's undisputed, I think, by the Board. All the merchants were fully aware of where the Board was placing the transaction monitoring costs upon the issuance of the rule in 2011, and any interested party could have challenged the rule at that time. And that same argument extends to their second point, which is that the D.C. Circuit's reopening doctrine saves the case and that the Board reopened the rule through that small clarification. This argument also fails. In fact, the plaintiffs rely on their reply brief on Biden v. Texas, which was decided during the briefing for the proposition that that case supports their argument. But the D.C. Circuit or the Supreme Court throws some cold water on their reopening in footnote 8 of that brief, where they say that the Court, the Supreme Court, has never adopted that standard. I'll note that this Court has not either. Has any other court besides the D.C. Circuit adopted that? I believe that one or two other courts of appeals have referred to it, citing the D.C. Circuit case law. A couple of the courts of appeals have suggested even if we were to apply it, it wouldn't be final agency action, Your Honor. But the Supreme Court said they thought the doctrine was in any event inapposite to the question of final agency action. But it doesn't really matter because even under the D.C. Circuit's case law, under this reopening doctrine, and all the cases that the merchants cite are from the D.C. Circuit on this, it would not apply here. The hallmark of those cases is notice and comment rulemaking or some other indicia that the agency has substantively reconsidered the basis of its rule. And there's just really no evidence of that whatsoever here, Your Honor. The Board just offered a very short clarification of why it had put a small transaction monitoring cost, which, you know, they — the merchants also make this analogy in their briefs about a three-legged chair. Well, that analogy is puzzling and not very helpful, Your Honor, because the value of the transaction monitoring costs is set out in the Board's rule. It's seven-tenths of a cent. So it's a small — yes, it's a component of the overall 21-cent standard. But the idea that the whole rule would have just collapsed had the Board improbably not followed the D.C. Circuit's direction to clarify the rule is just not accurate. No. I've been assuming that the clarification was not subject to notice and comment procedure, correct? That's correct, Your Honor. Okay. What — was it subject to any administrative procedure? It was published in the Federal Register, Your Honor. When done. Fait accompli. One time. Right? Correct. Yes, Your Honor. It said, the D.C. Circuit has asked us to do this, and here's the explanation, consistent with what we said before. This is where it goes. This seven-tenths of a cent. Any litigation on that? None, I assume? No, Your Honor. All the plaintiffs had a chance to see it while the case was still pending before the district judge. They said, read the clarification, we're — we may not love it, but we're willing to consent to entry of judgment. And that's exactly what happened. Finally, I'd like to — to use the last bit of my time, Your Honor, to address the equitable tolling argument that they've raised. The Corner Post, and they seem to only press this argument as to the Corner Post, recognizing that there's no basis for equitable tolling for the trade associations. But they claim that it's an extraordinary circumstance and meets the Supreme Court's test for equitable tolling that the Corner Post had not yet been incorporated by its ownership. But their argument doesn't meet either of the two distinct requirements that the Supreme Court has applied to the equitable tolling analysis. First, it was not subject to any extraordinary circumstance beyond its own control or making, which is a quintessential choice of its own control and making. But also, it sat on its rights and didn't — even after waiting more than three years, after it had begun accepting debit cards, the Corner Post still did not join this lawsuit at its outset. And that was a strategic choice that they made for their own reasons, but point being, the Corner Post was clearly — was clearly sitting on its rights and should not be excused, even if the — even if the Court were to find the statute to be not jurisdictional and subject to tolling. Now, note in this regard, one sort of unusual aspect is the statute — if tolling were to be granted, the statute 2401A in this case has a second sentence to it, and it provides an express tolling provision. And it gives three years for those under — I'll read the language exactly, but it says — Well, did they make the three years? They did not, Your Honor. More than three years, even after they began accepting debit cards. So the legal disability — it says the action of any person under legal disability at the time the claim accrues may be commenced within three years after the disability ceases. So it would be quite an odd, perhaps absurd, result if an express tolling provision — although I'm not claiming it's applicable here, but it would be odd if an express tolling provision for a person under legal disability could not bring suit, but the corner post could. With that, I'll ask that the judgment of the district court respectfully be affirmed. Thank you, Mr. Chadwick. Mr. Green, your rebuttal. Thank you, Your Honor. Just a few points. My friend, Mr. Chadwick, started with the description of the merits. Of course, this is all a statute of limitations point, but just to drive home our view of the merits, the board said we started at 44 cents for the fee. We took it to 21, and the merchants weren't happy. The merchants aren't happy, and my client's not happy because Congress said make it reasonable and proportional to the cost of a transaction, which is 4 cents. So there's still an almost 500 percent difference in what's happening between the cost and what my clients are paying. So for whatever that's worth. Turning to the statute of limitations question itself and this notion, I believe it was you, Judge Menten. I'm sorry if I wrote it down incorrectly, but this notion of as applied versus facial, that's not something that's in Isaac Walton. It's not something in Section 702. It's not in 704. It's not in 2401A. The bigger point is that's not also the basis of Judge Sutton's opinion for the Sixth Circuit in the Hur case. And if I could just one more time read that particular language. Actually, I won't do that, but let me just make this point. No other court of appeals, as far as we have been able to tell, has analyzed this particular issue, this accrual issue, and how 2401A relates to Section 702 of the APA in this sort of detail. Certainly not before Judge Sutton nor after Judge Sutton. But that's exactly what we're asking this Court to do. So this Court, I guess, we make the arguments and the Court can agree with us or disagree with us. It's certainly your prerogative. But if the Court does disagree with us and say Judge Sutton was wrong, that will be a wire circuit split on this issue that this particular Supreme Court, the members of it who have been watching agency actions, I think could be particularly interested in. And with that, unless there are further questions, I'll yield the balance of my time. Thank you.